# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 14- |
| v. | : | **UNDER SEAL** |
| **DELORES DURHAM,** | : | VIOLATION: |
| Defendant. | : | 18 U.S.C. § 286 (Conspiracy to Defraud the Government with Respect to Claims) |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE – CONSPIRACY

### I. INTRODUCTION

**A.  Overview Regarding Tax Matters**

At all times relevant herein:

1. The Internal Revenue Service (IRS) is an agency of the United States of America, Department of the Treasury, maintaining its headquarters at 1111 Constitution Avenue, NW, Washington, D.C. The IRS has responsibility for administering provisions of the Internal Revenue Code and for the collection of income taxes.

2. Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 U.S. Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

3. A Form 1040 is a tax form used by an individual to report taxable income from wages and/or from self-employment. An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

4.     A Schedule C -Net Profit From Business is used to report profit or loss from a sole proprietorship. The form supports and is attached to an individual's Form 1040. Profit or loss reflected on the Schedule C is also reported on the Form 1040. A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

5.     Adjusted Gross Income is total gross income minus specific reductions.

6.     The Earned Income Tax Credit (EITC) is a tax credit intended to help taxpayers keep more of what they earn. It is a refundable federal income tax credit for low- to moderate-income working individuals and families. Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit. In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

**B.     The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

7.     At all times relevant herein, an extensive network of over 130 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $40 million in fraudulently claimed income tax refunds. During the approximate period 2006 through present (for tax years 2005 through 2012) the co-conspirators caused the filing of at least 12,000 fraudulent federal income tax returns listing one of over 436 addresses located in the District of Columbia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

8. Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

9. The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 14 patients of a nursing home, ten of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H.," were deceased at the time when their means of identification was used in the scheme alleged herein.

10. The tax fraud scheme involved using inflated Adjusted Gross Income (AGI), by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit.

11. The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A. Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer" would accompany a co-conspirator to a check cashing service, liquor store, or financial institution to negotiate the check.

B. Those permitting their residential address to be used for the delivery of U.S. Treasury checks, which were federal income tax refunds, in the names of persons who did not in fact reside at the address;

C. Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks, which were federal income tax refunds, issued in the names of third parties, including victims of identity theft;

D. Those forging the endorsement of an identity theft victim on the back of a U.S. Treasury check, which was a fraudulently obtained federal income tax refund;

E. Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

F. Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

G. One or more U.S. Postal Service Mail Carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

H. Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer" operated a Schedule C business as a "barber," claiming income sufficient to generate a tax refund based upon the EITC, and also fraudulently claimed dependents, who were not the dependents of

the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

11. The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the U.S. Treasury checks which were fraudulent income tax refunds, and did not endorse the checks or receive any of the proceeds. In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the Treasury checks that were issued, and never worked as barbers.

12. In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

13. Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks, which were federal income tax refunds, mailed to their residence typically received in exchange approximately $150 per check. Those who negotiated such checks typically received in exchange approximately $250 per check. Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

14. All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. District of Columbia taxpayers seeking a federal income tax refund are required to file their income tax return with the IRS Service Center in Kansas City, Missouri. In an apparent effort to

frustrate IRS fraud detection efforts, the returns filed were mailed to various IRS Service Centers, nationwide.

15. For the approximate period 2006 to present, the above-described scheme caused the filing of at least 12,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $40 million, and caused the issuance of fraudulent U.S. Treasury checks, that is income tax refunds, which were delivered to various addresses located in the District of Columbia and elsewhere.

C. **Defendant Delores Durham's Role in the Scheme**

16. From on or about April 7, 2010, and continuing until on or about November 20, 2010, the defendant, DELORES DURHAM, permitted her residential address, located in the District of Columbia, to be used by an unindicted co-conspirator for the receipt of U.S. Treasury checks, which were fraudulently obtained federal income tax refunds, in the names of persons who the defendant, DELORES DURHAM, did not know, for which she received a portion of the proceeds. The defendant, DELORES DURHAM, received approximately $50-$100 per check, as her portion of the proceeds for each check she received at her residence. Approximately 257 (two hundred fifty-seven) fraudulently obtained federal income tax refund checks, totaling approximately $627,042.71, were delivered to the residential address of the defendant, DELORES DURHAM, in connection with the scheme described herein. Two hundred twenty-two (222) of the checks were negotiated causing a loss to the U.S. Treasury, Internal Revenue Service, in the approximate amount of $542,398.23.

17. On or about July 19, 2010, as per the instructions of unindicted co-conspirator A.C., the defendant, DELORES DURHAM, met with unindicted co-conspirator Y, an employee of SunTrust Bank, who assisted her in setting up a business checking account. From on or about

July 19, 2010, and continuing until on or about October 1, 2010, the defendant, DELORES DURHAM, with the assistance of unindicted co-conspirator Y, and using her business checking account at SunTrust Bank, Account No. XXXXXX-4293, negotiated at least 169 (one hundred sixty-nine) fraudulently obtained federal income tax refund checks, totaling approximately $410,055.03, which were provided to her by unindicted co-conspirator A.C., and which were also obtained in the scheme detailed herein. Upon negotiating these checks, the defendant, DELORES DURHAM, provided the cash to unindicted co-conspirator A.C.

## II. THE CONSPIRACY

18. From in or about August of 2010, continuing until in or about November of 2010, within the District of Columbia and elsewhere, the defendant, DELORES DURHAM, unindicted co-conspirators A.C. and Y, and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is the Internal Revenue Service, of monies in the approximate amount of $1,037,097.74 through the filing of fraudulent Federal income tax returns which caused the issuance of 426 U.S. Treasury income tax refund checks.

## III. THE GOAL OF THE CONSPIRACY

19. It was the goal of the conspiracy that the defendant, DELORES DURHAM, unindicted co-conspirators A.C. and Y, and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent U.S. federal income tax returns, the Schedule C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" operated a business as a sole proprietorship, including a "barber" or "childcare," and falsely stated that the "taxpayer" had gross receipts and two or more

dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information, or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## IV. MANNER AND MEANS

20. In order to further the objects and goals of the conspiracy, the defendant, DELORES DURHAM, unindicted co-conspirators A.C. and Y, and other individuals whose identities are known and unknown, used the following manners and means, among others:

A. The defendant, DELORES DURHAM, would agree to allow her District of Colombia residential address to be used by unindicted-co-conspirators, whose identities are known and unknown, as the "taxpayer" address, in the preparation of fraudulent U.S. individual income tax returns, Forms 1040, seeking fraudulent income tax refunds.

B. The defendant, DELORES DURHAM, would receive at her District of Columbia residential address, through the Mails, U.S. Treasury checks, which were fraudulent income tax refunds, in the names of other individuals she did not know and who did not reside at her address.

C. The defendant, DELORES DURHAM, would contact unindicted co-conspirator A.C. when she received U.S. Treasury checks in her residential mailbox.

D. Unindicted co-conspirator A.C. would then receive from the defendant, DELORES DURHAM, the U.S. Treasury checks which were mailed to her residence.

E. Unindicted co-conspirator A.C. would thereafter cause the checks retrieved to be negotiated.

F.   The defendant, DELORES DURHAM, and other unindicted co-conspirators, known and unknown, would receive a portion of the check proceeds.

G.   The defendant, DELORES DURHAM, would also agree to use her business checking account at SunTrust Bank, Account No. XXXXXX-4293, to negotiate U.S. Treasury checks obtained as part of the scheme, which were received through the Mails at her residential address or provided to her by unindicted co-conspirator A.C.

H.   The defendant, DELORES DURHAM, would deposit at least 169 (one hundred sixty-nine) U.S. Treasury checks obtained through the scheme into her SunTrust business checking account, in order to negotiate said checks.

I.   The defendant, DELORES DURHAM, would then withdraw the funds at the direction of co-conspirator Y and provide the funds to unindicted co-conspirator A.C.

## V. OVERT ACTS

21.   Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the defendant, DELORES DURHAM, and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A.   On or about June 21, 2010, an unindicted co-conspirator created a fraudulent Form1040, U.S. Individual Income Tax Return, for the tax year 2007, and a fraudulent Schedule C, in the name of B.W. with a stated District of Columbia address, requesting a refund of approximately $2,349.00.

B.   On or about June 25, 2010, an unindicted co-conspirator caused the mailing of the fraudulent income tax return referenced above, by mailing it to the Internal Revenue Service, Andover, MA, 05501-0002.

C. On or about July 30, 2010, an unindicted co-conspirator received a United States Treasury check in the amount of $2,349.00, in the name of B.W., at the District of Columbia address stated on the abovementioned tax return, which was an IRS income tax refund issued based upon the fraudulent income tax return referenced above, and provided it to unindicted co-conspirator A.C., who provided it to the defendant, DELORES DURHAM, who negotiated the check on or about August 3, 2010, by depositing it into her business checking account at SunTrust Bank, Account No. XXXXXX-4293.

**(Conspiracy to Defraud the Government with Respect to Claims**, in violation of Title 18, United States Code, Section 286).

<div style="margin-left:3em;">

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
for the District of Columbia
D.C. Bar No. 447889

By: *[signature]*
ELLEN CHUBIN EPSTEIN
Assistant U.S. Attorney
D.C. Bar No. 442861
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1773
ellen.chubin@usdoj.gov

JESSICA MORAN
Trial Attorney
Department of Justice, Tax Division
V.A. Bar. No. 85330
601 D Street, N.W.
Washington, D.C. 20530
(202) 305-9814
jessica.n.moran@usdoj.gov

</div>